OKLAHOMA INDUSTRIAL FINANCE AUTHORITY — LOANS
The Oklahoma Industrial Finance Authority is not prohibited by Article V, Section 53 of the Oklahoma Constitution, from renegotiating its loan with Osage County Industrial Authority and whether the loan should or should not be renegotiated is an administrative decision to be made by the Board of Directors of the Oklahoma Industrial Finance Authority based upon practical business considerations. The Attorney General has received your request for an opinion wherein you ask, in effect, whether the Oklahoma Industrial Finance Authority, hereinafter called OIFA, can renegotiate its loan with the Osage County Industrial Authority when the renegotiation would have the effect of ultimately releasing part or all of the collateral securing the loan, and would have the effect of reducing what OIFA would ultimately receive in payments on the loan. In your letter you state the facts which are summarized as follows: Osage County issued G.O. Bonds in the sum of $2,350,000 for the acquisition of land and equipment and construction of a building in Pawhuska, Oklahoma, and placed title in Osage County Industrial Authority, hereafter called OCIA. Later, OCIA obtained a loan from OIFA in the sum of $425,000, which is secured by a second mortgage on the land and buildings and some of the equipment. The outstanding balance due on the principal of the note to OIFA is approximately $391,000. The monthly payments to OIFA are $2,613.75, and they are ten monthly payments in arrears at this time. You have informed us that the facilities were leased to an Oklahoma industry, and due to the financial distress of that industry, it is no longer able to pay the lease payments from which OCIA paid the note payments to OIFA, and the future looks bleak as to the possibility of that industry being able to resume payments. OCIA now wants to cancel its lease with the present lessee with the lessee's promise to pay the back lease payments overdue, which would allow OCIA to pay the back note payments to OIFA. Upon cancellation of the present lease, OCIA wants to enter into a lease-purchase agreement with another manufacturer wherein the new tenant will pay $1,500,000 over a twenty-five year period at 5-3/8ths percent interest for the land, buildings and part of the equipment. The payments over the twenty-five year period will total approximately $2,325,000, in addition to approximately $170,000 paid in lieu of taxes. In addition, part of the equipment which the new tenant does not want might be sold, thus increasing the amount OIFA would receive. OIFA and OCIA would split the payments received on roughly a 15.3 percent to 84.7 percent basis, which corresponds to respective proportions of the original total indebtedness supplied by OIFA and the G.O. Bonds. The net effect of all this is that had OIFA received all of its note payments to maturity, it would have received in excess of $650,000. If the new arrangement is carried out, OIFA will have received approximately $521,877.50 at the end of the twenty-five year period. If this arrangement is not carried through, and no new tenant is found, and it is necessary to foreclose on the first mortgage securing the G.O. Bonds, and the second mortgage held by OIFA, it is possible, and most likely probable, that OIFA will recover nothing from the foreclosure. Thus, the effect of the renegotiation mentioned above is the minimizing of the loss for OIFA by not having to go the foreclosure route. Concerning the authority for OIFA to enter into this arrangement, it is necessary to look at several statutory provisions, and at Article V, 53 of the Oklahoma Constitution. Title 74 O.S. 852 [74-852] (1971) states the purpose of the Oklahoma Industrial Finance Authority Act, and states in part: "It is hereby declared to be the purpose of this act . . . to aid and assist with Oklahoma's industrial development and provide additional employment and payrolls within this State." Section 74 O.S. 855 [74-855] states: "The Authority, as a public corporation and governmental instrumentality exercising public powers of the State of Oklahoma, is hereby granted and shall have and may exercise all powers necessary or appropriate to carry out and effectuate the purposes of this Act, including the following powers, in addition to other powers granted: "(a) To cooperate with industrial development agencies in their efforts to promote the expansion of industrial and manufacturing activity in the State. "(b) To determine, upon the proper application of industrial development agencies, whether the declared public purpose of this Act is then or will be accomplished by the establishment of such industrial development projects by such industrial development agencies. "(g) To make, upon proper application of industrial development agencies, loans to such industrial development agencies of monies held in the Industrial Development Fund for industrial development projects in Oklahoma, and to provide for the repayment and redeposit of such allocations and loans in the manner hereinafter provided. "(1) To make contracts of every name and nature and execute all instruments necessary or convenient for the carrying on of its business. "(n) To take title by foreclosure to any industrial development project where such acquisition is necessary to protect any loan previously made by the Authority, and to sell, transfer and convey any such industrial development project to any responsible buyer; in the event such sale, transfer or conveyance cannot be effected with reasonable promptness, the Authority may, in order to minimize financial losses and sustain employment, lease such industrial development project to a responsible tenant or tenants; . . ." Inherent in the powers mentioned above would be included the authority to handle the business affairs of OIFA as prudently as possible in the light of sound business judgment. Included in the handling of the business affairs would be the authority, and even the duty, to minimize all losses insofar as this could be done in a practical manner. If the Board of Directors of OIFA made a business judgment or decision that the proposed plan mentioned above would help reduce the loss to OIFA, and that to refuse the above mentioned plan and proceed with foreclosure would result in OIFA getting less or possibly nothing, OIFA could accept the proposed plan, if there are no restrictions. Article V, Section 53 of the Oklahoma Constitution states: "Release or extinguishment of debts or liabilities to state, county or municipality. — Except as to tax and assessment charges against real property remaining delinquent and unpaid for a period of time as long or longer than that provided by law to authorize the taking title to real property by prescription, the Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liabilities, or obligations of any corporation or individual, to this State, or any county or other municipal corporation thereof." The constitutional provision mentioned above pertains to obligations of corporations or individuals to state, county or municipality. The Osage County Industrial Authority is not a corporation, or individual, but is a public trust. In summary, the determination of whether to renegotiate the loan with OCIA is an administrative decision to be made by the Board of Directors of OIFA according to sound business principles. The restrictions of Article V, Section 53 of the Oklahoma Constitution would not apply to this situation. It is, therefore, the opinion of the Attorney General that your question be answered as follows: The Oklahoma Industrial Finance Authority is not prohibited by Article V, Section 53 of the Oklahoma Constitution, from renegotiating its loan with Osage County Industrial Authority and whether the loan should or should not be renegotiated is an administrative decision to be made by the Board of Directors of the Oklahoma Industrial Finance Authority based upon practical business considerations. (Todd Markum)